**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILLIAM K. MAHOE, | No. 15-16917 |
| Plaintiff-Appellee, | D.C. No. 1:13-cv-00186-HG-BMK |
| v. | |
| OPERATING ENGINEERS LOCAL UNION NO. 3 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL-CIO, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Hawaii
Helen W. Gillmor, District Judge, Presiding

Argued and Submitted February 12, 2018
Honolulu, Hawaii

Before:  O'SCANNLAIN, CLIFTON, and IKUTA, Circuit Judges.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Operating Engineers Local Union No. 3 (the "Union") appeals the district court's denial of the Union's motion for attorney's fees. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

To award attorney's fees to a prevailing Title VII defendant, the district court must find "that the plaintiff's action was frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421 (1978). We review a decision on attorney's fees under Title VII for abuse of discretion. *E.E.O.C. v. Bruno's Rest.*, 13 F.3d 285, 287 (9th Cir. 1993). In reviewing for abuse of discretion, we first look to whether the trial court identified and applied the correct legal rule to the relief requested. *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc). Second, we look to whether the trial court's resolution resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *Id*.

The district court determined that Appellee Mahoe's discrimination claim was not frivolous. The court explained that Mahoe's claim had an arguable basis in law and fact because Mahoe made out a prima facie case of disparate treatment.

---

[1] Appellee points to errors in the opening brief to argue that we may not have jurisdiction over this appeal. But the notice of appeal clearly establishes that this appeal is from the district court's order denying attorney's fees. That is an appealable final order, and the notice of appeal was timely filed.

Specifically, Mahoe alleged that the Union decreased his income but not the income of a similarly situated Caucasian employee.

A claim may still be frivolous even if a plaintiff makes out a prima facie case. While a claim can survive a motion to dismiss by making out a prima facie case, a Title VII plaintiff can be liable for attorney's fees if he continues to litigate after discovering that the facts make his legal claims frivolous, unreasonable, or groundless. *See Christiansburg*, 434 U.S. at 422. This concept applies from the very beginning of a case. If a Title VII plaintiff knows that his claims are factually frivolous, unreasonable, or groundless, then that plaintiff can be liable for attorney's fees.

The Union cites Mahoe's deposition to argue that he knew from the outset that his reduction in income had nothing to do with race or national origin. But the deposition did not establish that Mahoe knew that his claim was without merit. The Union does not cite conclusive evidence indicating what Mahoe knew about the Caucasian employee who was purportedly similarly situated. Furthermore, after answering the leading questions cited by the Union, Mahoe went on to testify that he had been told that the pay-cut was "prearranged." Thus, Mahoe may have been indicating that the Union's stated reasons for the pay-cut were pretextual, or that he did not actually agree with the change in position or reduction in pay but simply

3

dealt with a decision that the union had already made, leaving the door open for a complaint that he had been discriminated against. The deposition therefore did not establish that Mahoe's claim was frivolous, and the district court did not abuse its discretion in regards to this testimony. *See Hinkson*, 585 F.3d at 1263.

The Union also argues that Mahoe's discrimination claim was barred by a letter of understanding requiring Mahoe to withdraw his claims with prejudice. The district court explained that no court had interpreted the legal effects of the letter, so it was unclear whether it was enforceable. As evidence of the uncertainty involved, the court noted that even the Union had failed to argue the potentially preclusive effect of the agreement in its two motions to dismiss. Not only does this indicate that the effect of the letter may not have been clear, but it also indicates that the Union may bear some responsibility for the costs incurred in defending this issue through summary judgment. Furthermore, given that the district court was in the best position to judge the uncertainty involved, it was not an abuse of discretion for the court to determine that the letter's effect was uncertain.

**AFFIRMED.**

FILED

MAR 02 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



I agree with the majority that the district court erred by relying on its prior finding that Mahoe had stated a prima facie claim for disparate treatment, when subsequent evidence showed that there was no basis for that claim. But I respectfully dissent from the majority's conclusion that the evidence does not show that Mahoe's claim was frivolous from the outset.

As set forth in the Second Amended Complaint (SAC), Mahoe's disparate treatment claim was based solely on Paragraphs 11(e) and (f), which state:

> e. In January 2010, plaintiff received a decrease in his income due to his refusal to relocate from Hawaii, where plaintiff lives, to the head office in Alameda, California, which was required by Defendant LOCAL 3. At the time of the reduction in pay Plaintiff was performing his duties properly.

> f. The Caucasian secretary of the Union, Jim Sullivan, residing in Utah was not treated the same for his refusal to relocate to Alameda, California, and did not have his income decreased even though he refused to relocate to California.

Mahoe's deposition testimony established that these allegations were false. Mahoe testified that he knew he was missing required officer meetings in California and had discussions with the Union about adjusting his pay due to missing those meetings. Therefore, contrary to the SAC, Mahoe knew he was not performing his duties properly. Mahoe testified that he wanted to avoid attending required officer meetings in California, and that he agreed to accept a reduction in

pay based on his acceptance of a different job that did not require his attendance at such meetings. Again, contrary to the SAC, Mahoe knew he had received a decrease in his income due to his desire to avoid discharging the responsibilities of a job that required frequent travels to meetings on the mainland, not because he refused to relocate to Alameda, California. Finally, Mahoe testified that he attended a meeting where the Union informed both Mahoe and Sullivan that the Union would no longer reimburse their lodging or living expenses during trips to the California headquarters. Contrary to the SAC, Mahoe was not treated differently than Jim Sullivan, because both were told they would not be reimbursed for expenses and Mahoe was not required to relocate to California. Because Mahoe took part in these conversations and events prior to this litigation, Mahoe should have known from the outset that his claim lacked any factual basis. This is therefore one of the "exceptional cases" in which Title VII defendants are entitled to fees. *Mitchell v. Office of L.A. Cty. Superintendent of Schools*, 805 F.2d 844, 848 (9th Cir. 1986).

The majority avoids this conclusion by speculating about a different theory of discrimination not presented in the SAC. Relying on Mahoe's deposition statement that the Union's proposal that he accept a different job at a reduced salary in exchange for not making trips to California was "prearranged," the

majority posits that Mahoe may have thought that Sullivan had not been forced to choose between making multiple trips to California or taking a different job with a reduced salary, and Mahoe had therefore been treated differently due to his race. But this theory does not correspond to any of the allegations in the SAC.

And contrary to the majority's suggestion, the Union need not conclusively establish that Mahoe actually knew his claim was frivolous. The Supreme Court has rejected the argument that the Union's entitlement to fees hinges on a showing of Mahoe's "subjective bad faith." *Christianburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 421 (1978). Accordingly, the Union need show only that Mahoe "should have anticipated" that he could not produce credible evidence in support of his claim. *Equal Emp't Opportunity Comm'n v. Bruno's Rest.*, 13 F.3d 285, 290 (9th Cir. 1993). Because the evidence establishes that Mahoe should have known his claim was unsupported by any evidence, I would reverse the district court and award attorneys fees to the Union.